FRANCIS E. LOUD & another *vs.* CITIZENS' MUTUAL INSURANCE COMPANY.

A representation, in an application for insurance against fire, that a counting room in the building which contains the property insured is warmed by a stove, and that the stove and funnel are well secured, does not bind the assured to keep the stove and funnel well secured when not in use.

A policy of insurance on goods against loss by fire is not avoided by the use, for a single night, of the building in which they are stored, as a shelter for the crew of a vessel which had filled with water; and the insurers are liable for a loss occasioned by the crew's making a fire, contrary to the express directions of the assured, in a stove which is in an unsafe condition at the time.

ACTION OF CONTRACT on a policy, whereby the plaintiffs were insured, under the conditions and limitations expressed in the rules and regulations thereto annexed, $2,500 against loss or damage by fire, for one year from the 18th of January 1853, on lumber, lime, nails and lead in their two stores on their wharf at Weymouth. One of the rules and regulations annexed to the policy was this: "ART. 10. Whenever the circumstances disclosed in any application shall become so changed as to increase the risk, the policy thereon shall be void, unless the insured make a new and full representation to the directors, and pay such further premium and deposit as they shall determine."

The plaintiffs, in their application for insurance, which was expressly made a part of the policy, represented that the stores were used for storing lumber, &c. and that one room in one of them was used as a counting room. The application also

19 *

contained the following question and answer: " How are the buildings warmed, and how are the stove pipes secured? Number of stoves, if any?" *Answer.* " Counting room warmed with coal stove. One stove. Funnel and stove well secured. No lights used in the building, evenings."

The question of the liability of the defendants was submitted to the court upon the following facts: On the 17th of September 1853, the schooner Statira, having on board a cargo of lumber of the plaintiffs, when near their wharf, got aground and filled. The beds and bedding on board, having been brought on deck, and being wet with the rain, were, by the plaintiffs' permission, removed into the store in which the counting room was. The vessel was then lightened, hauled into the wharf, and made fast. About midnight, one of the plaintiffs, at the request of the captain and crew, gave them permission to sleep in the counting room, but told them that they should not make or use any fire or light, or even smoke. There was a stove in the counting room, the funnel of which passed through the loft overhead, used for storing lumber, but was not then in a safe condition. The captain and crew, being wet and cold, disregarded the prohibition of the plaintiffs, and made a fire in the stove, which, in consequence of the defect in the funnel, quickly communicated to the building and lumber above, and so destroyed the property insured.

*J. J. Clarke,* for the plaintiffs.

*T. S. Harlow,* for the defendants.

METCALF, J. The representation made by the plaintiffs in their application for insurance was, that the counting room was warmed with coal by one stove, and that the funnel and stove were well secured. And there is nothing in the case to show that this was not a true representation when it was made. At the time of the fire, however, that part of the funnel, which was in the loft over the counting room, was not in a safe condition. And the first question is whether, upon the facts of the case, the unsafe condition of the funnel, at that time, avoided the policy.

It is contended by the defendants, that as the funnel of the stove was not in a safe condition when the loss happened, the

circumstances disclosed in the plaintiffs' application were so changed as to avoid the policy, under the tenth of the rules and regulations annexed thereto. This might be so, if the plaintiffs had continued to warm the counting room by fire in the stove. But if they used no fire in the stove, the risk was not increased by the insecurity of the funnel, nor even by its being wholly detached from the stove. It is a common practice to remove a funnel from its connection with a stove, during the months when a fire is unnecessary and would be oppressive. And this does not, of itself, enhance the risk assumed by underwriters on the contents of the building. It is the use of fire in a stove, and that alone, which makes it necessary that the stove and funnel should be well secured. And the representation, that the counting room was warmed by a stove and funnel thus secured, must be understood to mean, that when it was warmed at all, it was thus warmed; and not that the stove and funnel were well secured during the summer season, when there was no occasion to warm the room.

It does not appear, from the papers in the case, how the funnel of the stove came into an unsafe condition. But it was orally agreed, at the argument, that the part of the funnel, which was in the loft over the counting room, obstructed the free passage of persons about the loft, and was taken down in May or June; and that the plaintiffs never afterwards made a fire in the stove.

If the plaintiffs had used the stove on the night of the fire, or had authorized the use of it which was then made by the crew of the Statira, the defendants would not have been liable for the loss. But the plaintiffs did not authorize the use of fire in the stove. On the contrary, they forbade the use of fire in the room, in any way. The violation of that injunction, by the seamen, does not furnish a defence against the plaintiffs' claim. It was a wrongful act of third persons, for the consequences of which the defendants are liable, in the same manner and to the same extent, as if those persons had unlawfully broken into the counting room, and burned the building by kindling a fire on the floor. The plaintiffs were under no obligation, legal or moral,

to keep their stove secure against fire that might be kindled in it by trespassers and burglars, nor against forbidden acts of persons, "wet and cold," whom they admitted to the room as a shelter. Nor did this act of humanity of itself avoid the policy. Though the building was represented as occupied for storing lumber, and having a counting room in it, yet the use of the counting room for a single night, as a resting place for strangers, was not such a change of use as exempts the defendants from their liability to pay the loss sustained by the plaintiffs. See *Boardman* v. *Merrimack Mutual Fire Ins. Co.* 8 Cush. 585; *Dobson* v. *Sotheby*, Mood. & Malk. 90; *Shaw* v. *Robberds*, 1 Nev. & P. 279, and 6 Ad. & El. 75; *Barrett* v. *Jermy*, 3 Exchequer Reports, 545. [*Hynds* v. *Schenectady County Mutual Ins. Co* 1 Kernan, 554.]                    *Judgment for the plaintiffs*